IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| FARRON KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:12-cv-1089-DGW |
| | ) | |
| KEVIN LANGSTON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND OPINION**

**WILKERSON, Magistrate Judge:**

Now pending before the Court is the Motion for Summary Judgment filed by Defendant, Kevin Langston, on September 5, 2014 (Doc. 90). For the reasons set forth below, the Motion is **GRANTED**.

**Introduction**

Plaintiff Farron Kelly brings this action pursuant to 42 U.S.C. § 1983 alleging that Defendant Kevin Langston violated his rights under the Fourteenth Amendment by discriminating against him based on his race while he was incarcerated at Vienna Correctional Center ("Vienna"). More specifically, Plaintiff claims that Defendant purposefully discriminated against him by denying him the opportunity to purchase certain goods at the commissary at Vienna on October 12, 2010 because of his race.

On September 5, 2014, Defendant filed a motion for summary judgment arguing he is entitled to judgment as a matter of law (Doc. 90). Defendant argues that Plaintiff has failed to produce any evidence showing he acted with discriminatory intent, and, furthermore, he asserts he is entitled to qualified immunity. Plaintiff timely filed his response to Defendant's motion (Doc.

94), asserting that he has produced sufficient evidence for a jury to find that Defendant purposefully discriminated against him due to his race. Plaintiff further contends that Defendant is not entitled to qualified immunity.

## FACTUAL BACKGROUND

Plaintiff Farron Kelly was incarcerated within the Illinois Department of Corrections ("IDOC") and assigned to Vienna Correctional Center ("Vienna") in September, 2010 (Plaintiff's Deposition, Doc. 91-1, p. 8). Upon arrival at Vienna, Plaintiff was issued soap, a toothbrush, sheets, blankets, a correspondence box, and basic clothing items (*Id*. at p. 14). Plaintiff was not able to obtain additional items until his housing unit, building nineteen, wing three, was allowed to shop at Vienna's commissary (*Id.* at pp. 8-10). Plaintiff's housing unit was allowed to shop at the commissary on October 8, 2010 (*Id.* at 10). However, due to time constraints, there was not enough time for Plaintiff to shop (*Id.* at 11). On October 12, 2010, Plaintiff, along with six or seven other inmates from his housing unit, including Guadalupe Brito, Jose Ledesma, William Goad, and Davon Avery were allowed to shop in the commissary (*Id.*). Importantly, Plaintiff and Mr. Avery are African American, Mr. Brito and Mr. Ledesma are Hispanic, and Mr. Goad is Caucasian (*Id.* at pp. 44-45).

Plaintiff, along with the above-named inmates, arrived at the commissary around 9:00 a.m. and there were not any inmates from any other housing unit there at that time (*Id.* at pp. 8, 12). Pursuant to the proper protocol at that time, Plaintiff had completed his commissary list prior to shopping and, when he arrived at the commissary, placed his list and his identification badge in the window (*Id.* at p. 16). Plaintiff had $46.02 in his trust fund account and intended to purchase soap, shampoo, toothpaste, deodorant, boxers, sweats, noodles, paper, pens, pencils, and a legal pad (*Id.* at pp. 15-16).

Defendant, the Correctional Supply Supervisor for Vienna at the time, began calling the inmates up to the window individually, starting with Mr. Avery (Doc. 91-1, p. 17; Doc. 91-2, p. 1). Plaintiff heard Defendant tell Mr. Avery that he was only entitled to cosmetics and, when Mr. Avery tried to explain that he was not able to shop the commissary on October 8, 2010, Defendant told Mr. Avery to "Get the hell out of [his] window" (Doc. 91-1, p. 37). Mr. Avery then left without making any purchases (*Id.* at pp. 18-19). Plaintiff was then called to Defendant's window and Defendant remarked "well, we have another one" (*Id.* at p. 18). Defendant instructed Plaintiff that he could only purchase cosmetics, although Plaintiff attempted to explain that he was not able to shop the commissary with his housing unit on October 8, 2010 and did not have any restrictions placed on his commissary purchases at that time (*Id.* at pp. 18, 31). Defendant then called Mr. Ledesma and Mr. Brito to his window and denied them full commissary shopping as well, limiting their purchases to cosmetic items only (*Id.*). Plaintiff then left the commissary with Mr. Ledesma and Mr. Brito without making any purchases (*Id.*).

Once Plaintiff returned to his housing unit, he noticed that Mr. Goad was carrying a bag from the commissary and, based on the size of the bag, it was apparent to Plaintiff that Mr. Goad purchased more than cosmetics (*Id.* at p. 39). Plaintiff asked Mr. Goad how he was able to purchase his commissary and Mr. Goad responded that he did not know (*Id.*). The commissary records from October 12, 2010 indicate that Mr. Goad was able to purchase a number of items, including non-cosmetic items such as cereal, peanut butter, batteries, and envelopes (Doc. 91-2, pp. 5-6).[1] After being denied full commissary, Plaintiff spoke with Lieutenant Felker who told

---

[1] In Defendant's motion for summary judgment and in Plaintiff's response, Mr. Goad is referred to as "Joshua Goad." However, a review of the commissary report submitted in support of Defendant's motion is devoid of a "Joshua Goad." The report does reference "William Goad" (Doc. 91-2, pp. 5-6). It appears that William Goad is the individual that Plaintiff references in this

Plaintiff that he could go back to the commissary at noon on the same date (Doc. 91-1 at p. 19). Accordingly, Plaintiff, along with Mr. Avery, Mr. Ledesma, and Mr. Brito went back to the commissary in the afternoon, but were again denied full commissary by Defendant (*Id.* at p. 20). Plaintiff gave Defendant Langston a new commissary list that requested only cosmetics and ultimately spent about ten dollars on hygiene items ("cosmetics") that included hand sanitizer, lotion, soap, a soap dish, cotton swabs, razors, and a toothbrush holder (*Id.* at p. 31). Plaintiff did not see what Mr. Avery, Mr. Ledesma, or Mr. Brito purchased, but, once they returned to their housing unit, they all indicated they were only entitled to purchase cosmetics (*Id.* at pp. 22-25).

While at the commissary, Plaintiff noticed that three prison employees, including Defendant, were there (*Id.* at p. 36). While Defendant was informing Mr. Avery that he was only going to be able to purchase cosmetics, Plaintiff heard another employee tell Defendant that they were eligible to make a full purchase of commissary (*Id.* at p. 37). Defendant purportedly responded that he did not care and stated "they're only going to get cosmetics" (*Id.*). This interaction led Plaintiff to believe that Defendant was in charge of the other employees working in the commissary (*Id.* at pp. 45-46). Plaintiff did not see who checked out Mr. Avery, Mr. Brito, Mr. Ledesma, or Mr. Goad (*Id.* at p. 23). However, the commissary records establish that Defendant Langston checked out Plaintiff, Mr. Brito, and Mr. Ledesma and Billy Hicks checked out Mr. Goad and Mr. Avery (Doc. 91-2, pp. 4-5, 31). Defendant Langston has no personal recollection of the events Plaintiff complains of in this lawsuit, but claims that he did not deny Plaintiff or any other inmate the ability to make commissary purchases based on their race (Defendant's Deposition, Doc. 94-3, pp. 19-24; Doc. 94-6, pp. 1-4).

---

lawsuit, per his Amended Complaint (*See* Doc. 89, p. 2). Accordingly, throughout this Order, Mr. Goad will be referencing "William Goad" not "Joshua Goad."

In order to make commissary purchases, inmates come to the commissary and submit their order slip and identification through window slot and wait for a supply supervisor to determine if they are eligible to make purchases (Doc. 94-3, p. 12; Doc. 91-2, p. 1). Typically, an inmate is only allowed to shop if: (1) it is the designated date for his housing unit to shop; (2) he had sufficient money on the books; (3) he had not shopped in the last week; and (4) there were no other restrictions on his account (Doc. 91-2, p. 1; *see also* Doc. 94-3, p. 12). An inmate may be allowed to purchase cosmetic items if he complains that he has not been able to shop and does not have hygiene items, but this is a discretionary decision and not prison protocol (Doc. 94-3, pp. 15-16). Although rare, inmates whose housing unit ran out of time to shop will be allowed to continue their shopping at a later date (*Id.* at pp. 16-17).

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of a nonmoving party's case

necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted).

It is well settled that although prisoners do give up many rights of citizenship, they "do not surrender their rights to equal protection at the prison gate." *Williams v. Lane*, 851 F.2d 867, 881 (7th Cir. 1988). As such, "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolf v. McDonnell*, 418 U.S. 539, 556 (1974). However, disparate impact alone is not sufficient to support the finding of an equal protection violation. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-65 (1977). "A plaintiff asserting an equal protection violation must establish that a state actor has treated him different than persons of a different race and that the state actor did so purposefully." *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) (citing *Washington v. Davis*, 426 U.S. 229 (1976); *Indianapolis v. Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743 (7th Cir. 1999)). "Purposeful discrimination" indicates that the state actor singled out a particular group for disparate treatment and took a particular action for the purpose of causing adverse effects on the identifiable group. *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982). A plaintiff need not show that discrimination was the sole purpose for the state actor's action; rather, a plaintiff need only show that a discriminatory purpose was a "motivating factor" in the decision. *Arlington Heights*, 429 U.S. at 265. Discriminatory purpose may be established by offering direct proof or circumstantial evidence, including oral or written ambiguous statements. *Williams v. Seniff*, 342 F.3d 774, 788 (7th Cir. 2003); *Troupe v. May*

*Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994).

## DISCUSSION

Defendant Langston contends he is entitled to summary judgment because (1) Plaintiff has not produced any evidence that he discriminated against Plaintiff based on his race, and (2) he is entitled to qualified immunity.

In viewing the evidence in a light most favorable to Plaintiff, Plaintiff has produced evidence establishing that on October 12, 2010 he was entitled to shop at the Vienna commissary without restriction. However, Defendant Langston denied him the ability to shop the full commissary and limited Plaintiff to cosmetic items only. Defendant similarly denied three other inmates, one of whom is African American and the other two who are Hispanic. More specifically, Defendant first denied full commissary to Davon Avery, an African American, and, once Mr. Avery left and Plaintiff was called to the commissary window by Defendant, Defendant stated "well, we have another one." Defendant then denied Plaintiff and two other inmates, both Hispanic, full commissary. Importantly, another inmate, William Goad, who is Caucasian, went to commissary at the same time as Plaintiff and was able to shop the full commissary.

In order to succeed at the summary judgment stage, Plaintiff must establish some evidence that Defendant, a state actor, treated him different than persons of a different race, and did so purposefully. *DeWalt v. Carter*, 224 F.3d at 619. Plaintiff argues that Defendant's remark "we have another one" creates the inference that Defendant was acting with racial animus toward him in denying him full commissary. More specifically, Plaintiff asserts that although this statement does not overtly or expressly contain a racial slur, it identified Plaintiff as being part of a group and, when taken into account with the preferential treatment received by Mr. Goad, a Caucasian inmate, was racially derogatory. Although Plaintiff's argument is well-taken, the Court

disagrees. The statement "we have another one," even when analyzed in the context of the incidents taking place on October 12, 2010, is simply too non-specific to imply racial discrimination.

Moreover, Plaintiff has not produced any evidence that Defendant Langston actually treated Plaintiff differently than Mr. Goad, the Caucasian inmate. Plaintiff has produced evidence that William Goad was able to purchase items from the full commissary and was not limited to cosmetics although he was from the same housing unit and went to commissary at the same time as Plaintiff. However, the evidence establishes that Billy Hicks, not Defendant Langston, assisted Mr. Goad with his transaction. Although Plaintiff does not dispute this fact, Plaintiff argues that Defendant, as the employee charged with supervising the commissary on October 12, 2010, elected to restrict the commissary purchases of non-white inmates and, upon being informed by another commissary employee that Plaintiff and the other inmates from building nineteen, wing three, were eligible to make commissary purchases without restriction[2], overrode the other employee's eligibility determination and limited the non-white inmates' purchases to cosmetics only. Accordingly, Plaintiff argues that Defendant was responsible for limiting Plaintiff's commissary purchase and for failing to impose the same limitations on Mr. Goad.

The Seventh Circuit is clear that in order to support an equal protection claim, a plaintiff must produce evidence that the defendant directly participated in the violation or "acquiesced in some demonstrable way." *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). The

---

[2] Although it is arguable that the other employee's statement to Defendant regarding wing three's eligibility to make purchases is inadmissible hearsay, there appears to be an argument that this statement is not offered for the truth of the matter asserted. Accordingly, the Court will consider it as evidence for purposes of this Memorandum and Opinion.

evidence here is insufficient to establish any direct participation or acquiescence on behalf of Defendant with respect to his failure to ensure Mr. Goad was subject to the same limitations as the other inmates from wing three, including Plaintiff. There is no evidence that Defendant was aware that Mr. Goad was purchasing non-cosmetic items from the commissary on October 12, 2010 or that he acquiesced to Mr. Goad making such purchases. Moreover, there is no evidence that Defendant personally allowed any other inmate from Plaintiff's housing unit to purchase non-cosmetic items from the commissary on October 12, 2010. Based on the foregoing, Plaintiff has failed to present evidence sufficient to create a triable issue of fact that Defendant discriminated against him based on his race. Accordingly, Defendant Langston is entitled to judgment as a matter of law.

The Court need not consider the issue of qualified immunity because it has already concluded that the evidence, when viewed in a light most favorable to Plaintiff, does not establish a genuine issue of fact as to whether Defendant Langston violated Plaintiff's constitutional rights.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant Kevin Langston (Doc. 90) is **GRANTED**. Plaintiff's claims against Defendant Langston are **DISMISSED WITH PREJUDICE**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff, and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: March 26, 2015**

                                          **DONALD G. WILKERSON**
                                          United States Magistrate Judge